647 A.2d 608

Suzanne CIPOLLINI, Petitioner,

v.

**WORKMEN'S COMPENSATION APPEAL BOARD (PHILADELPHIA ELECTRIC COMPANY),**
Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs May 6, 1994.

Decided Aug. 22, 1994.

Petition for Allowance of Appeal Denied Dec. 2, 1994.

J. Michael Farrell, for petitioner.

Patrick J. Harvey, for respondent.

Before PELLEGRINI and FRIEDMAN, JJ., and LORD, Senior Judge.

FRIEDMAN, Judge.

Suzanne Cipollini appeals from an order of the Workmen's Compensation Appeal Board (Board) affirming a referee's [1] decision to dismiss Cipollini's claim petition by marking the petition "Withdrawn with Prejudice." [2]  We affirm.

The referee's findings are summarized as follows.  In September 1991, Cipollini filed a claim petition, alleging that on February 15, 1991 she suffered a work-related injury in the nature of "situational anxiety/depression" resulting in temporary total disability and permanent partial neuro-psychiatric disability.  Cipollini further alleged that the psychiatric injury was caused by substantial and systematic long-term abnormal job stress and harassment from her superiors which resulted in psychological symptoms requiring treatment in August of 1990 and, ultimately, led to a nervous breakdown in February of 1991.  (R.R. at 1a.)  Cipollini's employer, the Philadelphia Electric Company (PECO), filed a timely answer denying these allegations.

On February 18, 1992, Cipollini testified before a referee.  At Cipollini's request, the referee then continued the hearing for 90 days to enable Cipollini's counsel to depose Cipollini's fact witness and medical expert.  Subsequent hearings, scheduled for May 28, 1992 and June 25, 1992, also were continued

1.  Referees are now called Workers' Compensation Judges under the new amendments to the Workers' Compensation Act effective August 31, 1993.  Because this case was before the Referee prior to the effective date of the amendments, however, we will refer to the Referee as such and not as Workers' Compensation Judge.

2.  Although the referee's order merely directed that the petition be marked "Withdrawn with Prejudice," Cipollini did not agree to such a withdrawal.  Thus, the parties agree that the referee improperly designated the claim as withdrawn and they recognize that, in actuality, the referee dismissed the action.

at Cipollini's request as counsel for Cipollini was attached for trial. During a conference call on June 24, 1992, the referee granted Cipollini another 45 day continuance to submit the deposition transcript of her fact witness and to schedule the deposition of her medical expert. At an August 11, 1992 hearing, Cipollini's counsel represented that he had been unable to take any depositions and requested a further continuance.[3] Over PECO's objections, the referee granted Cipollini one final continuance for 60 days; however, the referee indicated that after that period, the record would be closed as to Cipollini. The next hearing was scheduled for November 17, 1992. Cipollini did not act within the 60 day period imposed by the referee; rather, on October 15, 1992, Cipollini's counsel first attempted to schedule the deposition of a fact witness. PECO objected to Cipollini's scheduling of the deposition more than 60 days after the August 11, 1992 hearing. During another conference call on November 5, 1992, the referee sustained PECO's objections and advised counsel that Cipollini's case would be closed at the November 17, 1992 hearing. By letter dated November 10, 1992, Cipollini requested that her petition be marked withdrawn without prejudice. Also by letter dated November 10, 1992, PECO objected to the petition being marked withdrawn without prejudice.

Based on his findings, the referee concluded that (1) Cipollini failed to submit any medical evidence establishing that she suffered a disabling work-related injury on February 15, 1991 and (2) Cipollini's claim petition should be marked withdrawn with prejudice for failure to prosecute. (R.R. at 15a.)

Cipollini appealed to the Board, specifically objecting to these conclusions and arguing that the referee abused his discretion in denying Cipollini's request that her petition be marked withdrawn without prejudice. Cipollini contended

3. At this conference, Cipollini's counsel informed the referee for the first time that he intended to depose two medical experts, rather than just calling Cipollini's treating physician as previously indicated, and would take the deposition of an additional fact witness. Although Cipollini's counsel identified the witnesses he intended to depose, he had, at that time, taken no steps toward scheduling the depositions. (Notes of Testimony, Hearing of August 11, 1992 at 6–15.)

that because the statute of limitations did not run until February of 1994, she should have been allowed to refile her petition. The Board disagreed and affirmed the referee. Basing its determination on *Fremont Farms v. Workmen's Compensation Appeal Board,* 147 Pa.Commonwealth Ct. 467, 608 A.2d 603 (1992), the Board stated: "Where a party flagrantly disregards a Referee's direction to proceed the record will not be considered to have been prematurely closed." (Board op. at 2; R.R. at 22a.)

On appeal to this court,[4] Cipollini argues that a just resolution of her claim precludes a premature closing of the record; rather, because of the harshness of the action, dismissal of a claim petition is appropriate only where the employer establishes prejudice. Cipollini contends that the record contains no evidence suggesting such prejudice here and, absent both a showing of prejudice by PECO and a finding of prejudice by the referee, the Board erred in affirming the referee's decision to mark Cipollini's claim petition "Withdrawn with Prejudice." In support of her position, Cipollini relies on *Essi International, Inc. v. Workmen's Compensation Appeal Board (Bowman),* 132 Pa.Commonwealth Ct. 573, 573 A.2d 677 (1990), and *Baird v. Workmen's Compensation Appeal Board (McTel),* 145 Pa.Commonwealth Ct. 69, 602 A.2d 452 (1992).

In *Essi,* a claimant had presented testimony and medical evidence in support of his claim petition during five hearings before the referee. At the fifth hearing, the claimant requested a continuance in order to depose his chief medical witness. The referee granted the claimant's request and, approximately one month before the rescheduled hearing, notified both parties that all evidence was to be presented at this "final" hearing, that the case would be decided on the basis of the record as of the conclusion of that hearing and warned that he would grant no further continuances. Five days prior to the

---

4. Our scope of review is limited to determining whether there has been a violation of constitutional rights, an error of law, or whether necessary facts are supported by substantial evidence. *Majesky v. Workmen's Compensation Appeal Board (Transit America, Inc.),* 141 Pa.Commonwealth Ct. 398, 595 A.2d 761 (1991), *appeal denied,* 529 Pa. 653, 602 A.2d 862 (1991).

scheduled last hearing, Claimant mailed the deposition of his medical witness to the referee. At the hearing itself, the referee admitted the transcript of the claimant's deposition into evidence and then addressed the employer's request for another continuance so that it could depose its medical witness. Commenting that the parties had been forewarned that the record would be closed as of this hearing, the referee denied the request. The referee then decided in favor of the claimant and the Board affirmed, dismissing the employer's argument that a remand was proper in light of the premature closing of the record. On appeal, we vacated the Board's order and remanded for further proceedings before the referee. Although critical of the action or inaction of counsel, we concluded that by closing the record before all evidence from both sides was admitted, "the referee entered a decision on an incomplete and tainted record that by its very nature could not yield competent evidence." *Id.* 132 Pa.Cmwlth. at 576, 573 A.2d at 678.

*Essi* is easily distinguished from the present case. Unlike Cipollini, the employer in *Essi* had not repeatedly failed to meet deadlines imposed by the referee and was not specifically warned by the referee that the record would be closed if the deadline was unmet.[5] Moreover, whereas the claimant in *Essi* was given and took advantage of the opportunity to offer testimony and evidence in six separate hearings, the employer's sole opportunity to present evidence was at the designated final hearing, even though at that time the claimant had not yet rested his case. Thus, in *Essi*, the referee based his decision on a record which not only was incomplete but was also tainted. That is not the case here. Certainly, this record was incomplete; however, it did not have the same taint as that of the record in *Essi*, where one party was allowed to establish a record in support of its case but the opposing party was denied the same opportunity.

*Baird* is likewise distinguishable. In *Baird*, as here, the only testimony presented was the claimant's. The claimant's

---

5. Instead, the referee notified the parties by mail that the next hearing would be the last hearing. *See Fremont Farms.*

counsel indicated that because of the complexity of the medical aspects of the case and the fact that there was an ancillary third party action pending, he had been unable to arrange for the necessary medical depositions. In all, there were twelve hearings scheduled and at least eight continuances of record; however, throughout this process, the employer, aware that it would be entitled to a subrogation claim in the event that the claimant succeeded in the third party action, willingly cooperated with the claimant's strategy to press the third party action rather than the workmen's compensation claim. In fact, the employer agreed to an indefinite postponement of the workmen's compensation matter. However, the employer subsequently reactivated the case and, when the claimant failed to appear at a scheduled hearing, requested that the referee dismiss the claimant's case for failure to appear and for failure to prosecute. The referee dismissed the action and the Board affirmed. We reversed and remanded. We noted that, acting in its own interest, the employer had willingly accepted the assignment of claimant's workmen's compensation claim to inactive status and, therefore, held that claimant's failure to prosecute did not warrant putting the claimant out of court where the employer was not prejudiced. *Id.* However, this holding is not applicable here. In contrast to the employer in *Baird,* which actually had supported the claimant's failure to prosecute, PECO consistently and strenuously objected to Cipollini's continued requests for continuances.[6]

Although distinguishable from *Essi* and *Baird,* we agree with the Board and PECO that this case is akin to *Fremont Farms.* In *Fremont Farms,* we determined that a referee properly closed the record, precluding the employer from offering additional evidence, where the employer failed to produce or even arrange to produce medical evidence within

6. Moreover, in its brief, PECO claims prejudice in that, as it is self-insured for the purpose of worker's compensation, delay of the matter would force it to set aside additional reserves to cover potential liability and interest on the claim. Moreover, PECO contends that it has already expended considerable monies to defend against Cipollini's claim and allowing Cipollini to refile her petition and begin her case anew would essentially double PECO's legal fees.

the deadlines imposed by the referee, where the employer never indicated that it wished to present testimony with regard to the issue of notice,[7] where the employer had ample opportunity to present its evidence, and where the referee had warned the employer that the record would be closed.

Here, the referee accommodated Cipollini by continuing the case several times to allow Cipollini's counsel to depose its witnesses; however, in the almost 9 months which elapsed from the time of the February 18, 1992 hearing until the November 17, 1992 hearing, Cipollini failed to take those depositions. In fact, Cipollini never even scheduled the deposition of its medical witness even though the referee specifically warned him that the record would be closed.[8] It is ex-

7. It is in this respect that *Fremont Farms* differs from the present case; however, we do not believe that this distinction prevents us from applying the rationale of *Fremont Farms* here.

8. At the August 11, 1992 hearing, Cipollini's counsel and the referee had the following conversation.

> COUNSEL: From the day of that conference call to today, Judge, it is completely and absolutely my fault for not having taken action on this file. I represent to the court I will have everything—I will have the fact depositions done and I will have the medical depositions scheduled if Your Honor gives me one, you know, one listing.
> REFEREE: How much time are you asking?
> COUNSEL: Probably 60 days. I may be able to get one of the two medical depositions done in that time.
> REFEREE: Why should I consider that you'll get this done when you didn't get it done from the conference call in June?
> COUNSEL: Well, one reason I think is probably because of the nature of the time of year, Judge.

(Notes of Testimony, Hearing of August 11, 1992 at 11–12.)
When counsel for PECO repeated her objection to the continuance, the referee said to Cipollini's counsel:

> REFEREE: I'm going to overrule the objection in the interest of justice for the Claimant, in spite of counsel's obviously lack of—trying to think of an appropriate word, counsel, but I'm going to give you— I'm going to give you one more time, 60 days. I expect you to have everything in.
> COUNSEL: I appreciate Your Honor's consideration.
> REFEREE: Whatever you can get in, in 60 days, that's it. If you have nothing, we're closing. If you have one deposition but no medical, we're closing. I'll give you 60 days. Is that understood?
> COUNSEL: Yes, Your Honor.
> REFEREE: And there will be no more excuses. Understood?
> COUNSEL: Yes, Your Honor.

(Notes of Testimony, Hearing of August 11, 1992 at 15.)

tremely unfortunate that Cipollini now is unable to litigate her claim on its merits; however, the referee provided her with ample opportunities to present her case. Her current misfortune resulted solely from her counsel's failure to act on these opportunities.

The referee based his decision to close the record and dismiss the case on Cipollini's continued disregard for the deadlines imposed by the referee coupled with PECO's objections to Cipollini's request to withdraw her petition without prejudice so that she could refile her claim. Under the circumstances here, we cannot conclude that the referee erred and, accordingly, we affirm.

## ORDER

AND NOW, this 22nd day of August, 1994, the order of the Workmen's Compensation Appeal Board, dated November 22, 1993, is affirmed.