IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Lucia Crosley Marks,              :
                   Petitioner    :
                                :
         v.                   :   No.  692 C.D. 2020
                                :   Submitted:  February 5, 2021
Workers' Compensation Appeal   :
Board (School District of        :
Philadelphia),                  :
                   Respondent   :

BEFORE:   HONORABLE MARY HANNAH LEAVITT, Judge
                HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE J. ANDREW CROMPTON, Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION
BY JUDGE CROMPTON                FILED:  May 14, 2021

       Lucia Crosley Marks (Claimant) petitions for review of a June 23, 2020 Order of the Workers' Compensation Appeal Board (the Board) affirming the decision of the Workers' Compensation Judge (WCJ) that denied Claimant's Review Petition and granted the School District of Philadelphia's (Employer) Termination Petition.  Claimant asserts that the WCJ inappropriately secured surveillance footage of her and relied, in part, on this footage in making his decision.  Claimant argues that the Board erred in affirming the WCJ's decision because the WCJ's findings were based, in part, on surveillance evidence that was inadmissible under 34 Pa. Code §131.61.  Upon consideration, we affirm the Board's order.

# I. Background

Claimant previously worked for Employer as a school counselor, a position which she had held since 1998, at the Stephen Decatur Elementary School. WCJ Decision, 07/18/2019, Findings of Fact (F.F.) Nos. 1, 10. On May 19, 2017, a first grader under Claimant's supervision was upset and refused to leave the lunchroom. When Claimant bent down to speak to the child, their heads butted, resulting in a concussion and neck injury to Claimant. F.F. Nos. 1, 10b.

Per Claimant's testimony, immediately following the collision, she fell back and was not sure if she was "unconscious" or in shock. F.F. No. 10b. Within the same timeframe, Claimant also reported feeling dizzy and nauseous and that she vomited in her trash can. F.F. No. 10c. While trying to retrieve her keys to drive herself to the emergency room, Claimant passed out, and a coworker subsequently drove her to the emergency room. *Id.* In "the next day or two" she noticed she had pain and stiffness in her neck and upper and lower back. She had shooting pains down her arms and legs and tingling in her hand. F.F. No. 10d.

Claimant was not experiencing neck, lumbar, or post-concussion issues immediately preceding the collision injury; however, Claimant did report having previously suffered neck, back, and hip injuries as well as a concussion due to various prior incidents. F.F. No. 10e.

On June 7, 2017, Employer issued a Medical-Only Notice of Temporary Compensation Payable, recognizing the work-related injury as a contusion to facial bones. F.F. No. 2. Then, on June 16, 2017, Employer issued an Amended Medical-Only Notice of Temporary Compensation Payable, amending the description of the work-related injury to concussion and cervical sprain/strain. F.F. No. 3.

2

On October 2, 2017, Employer accepted liability for total disability through an Amended Notice of Compensation Payable (NCP), which described the injury as a concussion and cervical sprain/strain. F.F. No. 4. Employer issued a second Amended NCP on October 3, 2017. Board Op., 06/23/2020, at 1. The second Amended NCP described the injuries as a cervical strain/sprain and concussion, and it provided for indemnity benefits of $995.00 per week. *Id.*

Dr. Paul Shipkin, M.D., a board-certified neurologist, evaluated Claimant on behalf of Employer on January 26, 2018, and concluded that Claimant had "fully recovered" and was able to return to work at full duty. F.F. No. 5. Based on Dr. Shipkin's opinion, Employer issued a Notice of Ability to Return to Work on February 9, 2018. F.F. No. 6. Employer expected Claimant to return to work on February 13, 2018, as a counselor at the same hours and pay as before the work injury. *Id.* Employer filed a Suspension Petition on February 13, 2018, and a Termination Petition on February 14, 2018, alleging full recovery as of January 26, 2018. Board Op., 06/23/2020, at 1.

Claimant reports that since the time of the work injury, she has experienced hypersensitivity to light and sound. F.F. No. 10f. She also suffers from four to five migraines per week, hand numbness, and an inability to concentrate. F.F. No. 10f, g. In Claimant's view, due to these symptoms, she is unable to return to work and would be "overwhelmed in a classroom." F.F. No. 10g.

As a result, Claimant filed a Review Petition on March 13, 2018, alleging that the second Amended NCP, issued by Employer on October 3, 2017, failed to recognize lumbar and cervical injuries. Board Op., 06/23/2020, at 1. Before the WCJ, Claimant objected to the admission of surveillance evidence obtained by Employer as it was "not produced in a timely fashion." WCJ Op., 07/18/2019, at 2.

3

On February 15, 2019, the WCJ issued an interlocutory order overruling Claimant's objection to the admission of the surveillance evidence. *Id.* The WCJ "observed that no prejudice had been shown as the surveillance was produced before the outstanding testimony was completed." *Id.*

The WCJ concluded that Claimant failed to carry the burden on her Review Petition, and that the injury is limited to a concussion and cervical sprain/strain. WCJ Op., 07/18/2019, Conclusions of Law (C.L.) No. 1. Further, the WCJ concluded that Employer sustained its burden on its Termination Petition and established that Claimant fully recovered from the work injury as of January 26, 2018. C.L. No. 2. Claimant appealed the WCJ's decision to the Board, which affirmed the WCJ's decision on June 23, 2020. Bd. Op., 06/23/2020, at 11. Claimant now petitions this Court for review.[1]

## II.    Discussion

Claimant asserts that the WCJ erred in considering surveillance evidence and that the Board subsequently erred in affirming the WCJ's decision given its consideration of the allegedly inadmissible surveillance video. Claimant argues that the WCJ's reliance on the surveillance footage not only skewed his understanding of Claimant's physical capabilities, but also impacted his understanding of the nature and extent of her injuries, both physically and neurologically, resulting in the denial of her Review Petition and the granting of Employer's Termination Petition.

---

[1] Our review is limited to determining whether an error of law was committed, whether necessary findings of fact were supported by substantial evidence, and whether constitutional rights were violated. *Dep't of Transp. v. Workers' Comp. Appeal Bd. (Clippinger)*, 38 A.3d 1037 (Pa. Cmwlth. 2011).

4

The surveillance evidence that is the subject of the instant case was a surveillance video of Claimant obtained by Employer over multiple dates in October 2018. Reproduced Record (R.R.) at 241a. On December 20, 2018, Dr. Armando Mendez, M.D., a board-certified orthopedic surgeon, authored an addendum report on behalf of Employer after reviewing the surveillance footage. R.R. at 154a. While Claimant was provided with a copy of the video footage on December 21, 2018, she filed an objection, before the WCJ, to the admission of the surveillance evidence under 34 Pa. Code § 131.61,[2] on the basis that it had not been produced in a timely

---

[2] 34 Pa. Code § 131.61 reads:

(a) Parties shall exchange all items and information, including medical documents, reports, records, employment records, wage information, affidavits, tapes, films and photographs, lists of witnesses, CD ROMs, diskettes and other digital recordings, to be used in or obtained for the purpose of prosecuting or defending a case, unless the foregoing are otherwise privileged or unavailable, whether or not intended to be used as evidence or exhibits.

(b) The moving party shall provide the items and information referred to in subsection (a) to the responding party prior to the commencement of the first pretrial hearing or hearing actually held. The responding party shall provide the items and information referred to in subsection (a) to the moving party no later than 45 days after the first pretrial hearing or hearing actually held.

(c) A witness whose identity has not been revealed as provided in subsections (a) and (b) may not be permitted to testify on behalf of the defaulting party unless the testimony is allowed within the judge's discretion.

(d) An item or information not exchanged as provided in subsections (a) and (b), which becomes available after the times set forth in subsection (b) shall be exchanged within 15 days after receipt by the party of the item or information.

(e) Statements, documents or other records required to be provided by this chapter, if not provided within the time periods in this chapter or modified under [Section] 131.12 (relating to modification of time), will not be admitted, relied upon or utilized in the proceedings or judge's rulings, as appropriate.

5

fashion. R.R. at 80a, 101a. In an interlocutory order dated February 15, 2019, the WCJ overruled Claimant's objection, citing WCJ Rule 131.12(a), 34 Pa. Code §131.12(a).[3] R.R. at 16a. Claimant renewed her objection to the surveillance evidence before the Board, but the Board did not address the argument based on Claimant's failure to preserve the issue in her Appeal Notice.[4] R.R. at 48a.

Before this Court, Claimant asks that the Decision and Order of the Board, dated June 23, 2020, be "vacated, in its entirety, in the interests [sic] of justice." Claimant's Br. at 18. However, Employer counters that the WCJ exercised appropriate discretion, and Claimant suffered no prejudice in the WCJ proceedings.

---

(f) Failure to comply with this section may result in the application of [Section] 131.13(m) (relating to continuances or postponements of hearings).

(g) Subsections (a) -- (f) supersede 1 Pa. Code §§ 35.161 and 35.162 (relating to form and admissibility of evidence; and reception and ruling on evidence).

[3] 34 Pa. Code §131.12(a) reads:

(a) Except for answers to petitions as set forth in [Section] 131.33 (relating to answers except answers to petitions for joinder and challenge proceedings), the time fixed or the period of time prescribed in this chapter may, in the exercise of sound discretion and for good cause, be shortened or extended by the judge upon the judge's motion or at the request of a party.

[4] Employer argues in its brief to this Court that Claimant waived her challenge to the admissibility of the surveillance footage as she failed to raise it in her appeal of the WCJ's decision. In reviewing the record, we note that, while Claimant did not include her objection to the admissibility of the surveillance evidence on her Appeal Notice with the Board, Claimant did present an argument against the admission of the evidence in her Appeal Brief submitted to the Board on October 15, 2019. R.R. at 265a-66a. However, as discussed below, the issue of the surveillance evidence was not dispositive of the issues before the WCJ and the Board. Therefore, in our discussion of the present case, we will not evaluate the waiver issue presented by Employer.

Claimant argues that Employer did not produce the surveillance evidence in a timely fashion because while she received a copy of the surveillance evidence from Employer on December 21, 2018, the surveillance footage was obtained in October 2018 and distributed to Dr. Mendez prior to the completion of his report on the surveillance evidence, dated December 20, 2018. Therefore, in Claimant's view, Employer was in violation of 34 Pa. Code § 131.61. Claimant specifically argues that discovery must be turned over to a claimant's counsel within 15 days of the defense's receipt of same if, as in this case, it is not available within 45 days after the first hearing.

Our Court has previously held that "[e]vidence not provided within the appropriate time period will not be admitted, relied upon or utilized in the proceedings or WCJ's rulings." *Anzaldo v. Workmen's Comp. Appeal Bd. (M&M Rest. Supply Co.)*, 667 A.2d 488, 493-94 (Pa. Cmwlth. 1995). In the instant case, per the Reproduced Record, Employer requested surveillance of Claimant on October 9, 2018, and received summaries of the surveillance activities on October 17, 2018, October 18, 2018, and October 25, 2018. R.R. at 254a. Claimant received a copy of the surveillance evidence from Employer on December 21, 2018. In his February 15, 2019 Interlocutory Order denying Claimant's objection to the admission of the surveillance evidence, the WCJ wrote:

> Claimant again objects to the surveillance evidence on the basis that it was not produced in a timely fashion. This issue was also discussed at the hearing of January 19, 2019. This Judge may extend deadlines "in the exercise of sound discretion" [34 Pa. Code §131.12(a)]. Accordingly, Claimant's objection to the surveillance evidence is again denied. No prejudice has been shown as the surveillance from October 2018 was produced before the outstanding testimony was completed.

WCJ Interlocutory Order, 02/15/2019, at 3; R.R. at 16a. Therefore, exercising his discretion, the WCJ determined that the surveillance evidence was admissible as Claimant's date of receipt of the evidence occurred prior to the conclusion of the WCJ proceedings and did not prejudice Claimant's appeal.

However, regardless of whether we accept the WCJ's finding that the surveillance evidence was admissible, it was not dispositive to the outcome of the case, as neither the determination of the WCJ nor that of the Board was based entirely on Employer's surveillance evidence. In his decision, the WCJ explained:

> This Judge adopts as credible the testimony of Dr[.] Shipkin and rejects the contrary testimony of [Claimant's doctor], Claimant and her husband. This Judge certainly accepts that [] Claimant initially had a myriad of complaints arising from the concussion, including headaches, nausea, forgetfulness, blurred vision, etc. However, there are no objective findings to corroborate an ongoing post-concussion syndrome. Therefore, the legitimacy of the ongoing symptoms depends on her credibility. Claimant's presentation is so replete with inconsistencies that her testimony is not credible and therefore her ongoing complaints are simply not worthy of belief.

WCJ Op., 07/18/2019, at 17; F.F. No. 29.

In termination proceedings, as in the case presently before this Court, the burden is on the employer to establish that the claimant has fully recovered from the work-related injury. *GA & FC Wagman, Inc. v. Workers' Comp. Appeal Bd. (Aucker)*, 785 A.2d 1087, 1091 (Pa. Cmwlth. 2001). The employer meets this burden when its medical expert unequivocally testifies, within a reasonable degree of medical certainty, that the claimant is fully recovered and can return to work without restrictions, and that there are no objective medical findings to substantiate any ongoing complaints or connect them to the work injury. *Udvari v. Workmen's Comp. Appeal Bd. (USAir, Inc.)*, 705 A.2d 1290, 1293 (Pa. 1997).

8

A WCJ's explanation of credibility determinations is subject to appellate correction only for distinct legal error. *Daniels v. Workers' Comp. Appeal Bd. (Tristate Transp.)*, 828 A.2d 1043, 1052 (Pa. 2003). The credibility determinations must be viewed as a whole and may be overturned only if they are arbitrary and capricious, fundamentally dependent on a misapprehension of material facts, or otherwise so flawed as to be irrational. *Casne v. Workers' Comp. Appeal Bd. (STAT Couriers, Inc.)*, 962 A.2d 14, 19 (Pa. Cmwlth. 2008). In *Casne*, this Court explained that reversal or remand is not required for any and every flaw in a WCJ's reasoning, but rather, the court will look to the overall reasoning. *Id.* The requirement for a reasoned decision does not radically depart from the traditional deference given to the WCJ's credibility determinations. *Id.*

In the instant case, the Board adopted this reasoning in affirming the WCJ. *See* Bd. Op., 06/23/2020, at 4; R.R. at 49a. "The WCJ reviewed the testimony and articulated objective reasons for crediting [Employer's] expert witnesses." Bd. Op., 06/23/2020, at 10; R.R. at 55a. The WCJ has complete authority over questions of credibility, conflicting medical evidence, and evidentiary weight. *Sherrod v. Workmen's Comp. Appeal Bd. (Thoroughgood, Inc.)*, 666 A.2d 383, 385 (Pa. Cmwlth. 1995). The WCJ is free to accept or reject, in whole or in part, the testimony of any witness. *Lombardo v. Workers' Comp. Appeal Bd. (Topps Co., Inc.)*, 698 A.2d 1378, 1381 (Pa. Cmwlth. 1997).

As put forth by Employer, "[t]he WCJ considered the surveillance footage as part of the tapestry of evidence supporting Employer's position." Employer's Br. at 11. "Simply stated, the surveillance was another piece of the puzzle that, when fully assembled, demonstrated that her accounts were unworthy of belief." *Id.* The surveillance evidence was not the sole consideration for the WCJ,

or the Board, in determining that Claimant did not meet her burden on her Review Petition. *See id.*

Claimant asks this Court to disregard the WCJ's credibility determinations in their entirety and determine that the WCJ erred in terminating Claimant's workers' compensation benefits simply due to the alleged contributory influence of the surveillance evidence on the WCJ's decision. While Claimant has not definitively demonstrated the WCJ erred by admitting the surveillance evidence,[5] Claimant also fails to address the fact that the WCJ found the testimony on behalf of Employer more credible than that provided on behalf of Claimant.

The appellate role is not to reweigh the evidence or to review the credibility of the witnesses. *Bethenergy Mines, Inc. v. Workmen's Comp. Appeal Bd. (Skirpan)*, 612 A.2d 434, 437 (Pa. 1992). Therefore, we are bound by the WCJ's findings unless there is no competent evidence of record to support those findings. *See id.* Because the WCJ found that Employer's testimony was more credible than that of Claimant, regardless of the admission of the surveillance evidence, the Board

---

[5] In *Coyne v. Workers' Compensation Appeal Board (Villanova University)*, 942 A.2d 939 (Pa. Cmwlth. 2008), this Court held that the test for determining if the WCJ erred in waiving the Special Rules, e.g., 34 Pa. Code § 131.12(a), is whether there has been an abuse of discretion. An appellant must show "prejudice," i.e., "the party objecting to the admission of such evidence has been rendered incapable of responding to such evidence, because[,] e.g., a witness has died, evidence has been lost, etc." *Atkins v. Workers' Comp. Appeal Bd. (Stapley in Germantown)*, 735 A.2d 196, 199-200 (Pa. Cmwlth. 1999) (citing *Class of Two Hundred Admin. Fac. Members v. Scanlon*, 466 A.2d 103, 105 (Pa. 1983) ("The prejudice required is established where, for example, witnesses die or become unavailable, records are lost or destroyed, and changes in position occur due to the anticipation that a party will not pursue a particular claim.")).

While Claimant alleges an issue of timeliness in producing the surveillance evidence, Claimant does not further expound upon the issue of prejudice or whether she suffered a negative impact because of the admission of the surveillance evidence. Claimant merely asks this Court to reverse the WCJ on the basis that she did not agree with the outcome, alleging an evidentiary issue that was previously addressed and denied by the WCJ. *See* WCJ Interlocutory Order, 02/15/2019.

did not err in affirming the decision of the WCJ denying Claimant's Review Petition and granting Employer's Termination Petition.

### III. Conclusion

Discerning no error below, we affirm the decision of the Board.

_____
J. ANDREW CROMPTON, Judge


Judge Fizzano Cannon did not participate in the decision of this case.

11

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Lucia Crosley Marks,                          :
                            Petitioner         :
                                               :
            v.                                 :     No.  692 C.D. 2020
                                               :
Workers' Compensation Appeal                   :
Board (School District of                      :
Philadelphia),                                 :
                            Respondent         :

# **O R D E R**

**AND NOW**, this 14th day of May 2021, the June 23, 2020 Order of the Workers' Compensation Appeal Board is AFFIRMED.


_____
J. ANDREW CROMPTON, Judge